IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUINCEY NORWOOD | : | CIVIL ACTION |
| v. | : | No. 13-3709 |
| PREMIER PERSONAL CARE, INC., et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                  October 15, 2013

Plaintiff Quincey Norwood brings this action pursuant to 42 U.S.C. § 1983 and Pennsylvania law against Premier Personal Care, Inc. (Premier) and Lower Makefield Township (Township), arising out of an incident in which a Premier employee allegedly filed a false police report against Norwood and, acting on Premier's false report, two Township police officers used excessive force to remove Norwood, who is more than 90 years old and uses a mechanized walker, from his own driveway.  Norwood brings state law claims against Premier for filing a false police report and against the Township for negligence in supervising, training, and failing to prevent tortious conduct by its employees.  He also brings a § 1983 claim against the Township, seeking to hold the Township liable for its officers' alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights.  Premier and the Township have each filed a motion to dismiss Norwood's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, the Township's motion will be granted; however, the Court will afford Norwood an opportunity to file an amended complaint to cure the pleading deficiencies in his § 1983 claim.  Premier's motion will be denied without prejudice to reassertion in the event Norwood files an amended complaint.

# FACTS[1]

Prior to May 2, 2012, Norwood contracted with Premier to provide in-home personal assistance for his terminally ill wife. Dissatisfied with Premier, on May 1, 2012, Norwood consulted with a different service provider, Right At Home Personal Services (Right At Home), about replacing Premier. Because Norwood was satisfied with the current Premier caregiver, Gladys Kimber, he asked Right At Home whether it might be able to hire Kimber to continue providing services to his wife. On May 2, 2012, Kimber started the day working in Norwood's home as a Premier employee, then left to attend an interview with Right At Home; Right At Home hired Kimber that same day. While Kimber was at the interview, Premier representative Amy Wilson arrived at Norwood's home and demanded to speak with Kimber. Norwood explained Kimber was not there and asked Wilson to leave. Kimber returned to Norwood's home later in the day and resumed work as an employee of Right At Home. Upon Kimber's return, Norwood called Premier and stated he was terminating his contract.

At approximately 8:00 p.m., a Premier representative called Kimber and instructed her to leave Norwood's residence, explaining if she did not leave, the police would physically remove her from the residence. Shortly thereafter, Wilson returned to Norwood's residence, presented Norwood with a bill for services through midnight that night, and again demanded to speak with Kimber. Norwood asked Wilson to leave and, when she failed to do so, proceeded onto his driveway using a mechanized walker. After Norwood entered his driveway, two Township police officers arrived at the residence in separate police cruisers. The officers were responding to a police report in which Wilson falsely stated Norwood was refusing to allow Kimber to leave

---

[1] The following facts are drawn from the allegations of Norwood's Complaint, which this Court must accept as true in evaluating the instant motions to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

his residence, even though she knew Kimber was no longer a Premier employee. The officers spoke with Wilson, then approached Norwood and asked him, "what is your problem?" Compl. ¶ 23. Norwood told the officers if Kimber said she wanted to leave, he would not stop her from going. Because Kimber told Norwood she did not want to leave, but was being forced to leave by the police and Premier, Norwood resisted the officers' efforts to remove him from his driveway.[2] The officers thereafter attempted to forcibly remove Norwood, who was still holding onto his mechanized walker, causing him to strike the pavement and sustain serious and permanent injuries. Norwood alleges had the officers known that he and Wilson were simply having a business dispute and that Kimber was not being held at Norwood's home against her will, they would not have used physical force to remove him from his driveway.

In June 2013, Norwood filed suit against Premier and the Township in the Bucks County Court of Common Pleas. The Township removed the case to this Court, and both Defendants filed motions to dismiss.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a district court first must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court

---

[2] Although the Complaint does not specify why the officers sought to remove Norwood from his driveway, in his opposition papers, Norwood states the officers attempted to move him after they asked him to move from his driveway and he refused to do so. Pl.'s Opp'n to Twp.'s Mot. to Dismiss 3; Pl.'s Opp'n to Premier's Mot. to Dismiss 2.

3

"must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal,* 556 U.S. at 679).

Norwood does not oppose dismissal of his negligence claim against the Township, which is barred by the Pennsylvania Political Subdivision Tort Claims Act (PSTCA), 42 Pa. Cons. Stat. Ann. §§ 8541-8542. The PSTCA grants local agencies immunity from liability for damages caused by agency employees, subject to eight specifically enumerated statutory exceptions. At oral argument on the motions to dismiss, Norwood conceded his negligence claim against the Township does not fall within any of the statutory exceptions. Therefore, the negligence claim will be dismissed with prejudice.

Norwood's § 1983 claim against the Township is based on its officers' alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights. A municipality may be liable under § 1983 only "when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). As the Third Circuit has explained, "[p]olicy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict," while "[a] course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Id.* at 658 (citation and internal quotation marks omitted). To allege a plausible § 1983 claim against a municipality, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *Id.*

4

Norwood argues he has pleaded a plausible claim for municipal liability under § 1983 based on a failure-to-train theory, asserting the Township should be held liable for its officers' use of excessive force in removing him from his driveway because "[i]t is apparent, from the facts alleged, that these officers lacked the sufficient training which would otherwise govern what would be considered a reasonable police officer's response to such a situation." Pl.'s Opp'n to Twp.'s Mot. to Dismiss 6; *see also id.* (asserting "it is more than 'plausible' that the officers lacked sufficient training, supervision and/or control"). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). However, a § 1983 claim may be predicated on a failure-to-train theory only when the failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To establish municipal liability under § 1983 based on a failure-to-train theory, a plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005) (quoting *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S. Ct. at 1360 (citation omitted).

Although Norwood's § 1983 claim is set forth in Count III of the Complaint, the sole allegation regarding the Township's failure to train appears in Count II, Norwood's negligence claim, in which Norwood alleges "the negligence of Defendant, Lower Makefield Township,

consisted of the following: . . . b. Failure to adequately train and instruct its employees." Compl. ¶ 36. This lone conclusory allegation is insufficient to state a plausible § 1983 claim against the Township based on a failure-to-train theory. Norwood does not identify any particular training the Township failed to provide, much less identify any training deficiency with a causal nexus to his injuries. Nor has he alleged any facts to suggest the Township had "actual or constructive notice that a particular omission in [its] training program cause[d] [Township] employees to violate citizens' constitutional rights," such that the Township's failure to remedy the omission could be deemed to constitute deliberate indifference. *See Connick*, 131 S. Ct. at 1360. To the contrary, Norwood's sole allegation on the subject of training is framed only in terms of negligence.

Because Norwood has failed to allege a plausible claim for municipal liability under § 1983, his § 1983 claim against the Township will be dismissed. *See Bradshaw v. Twp. of Middleton*, 145 F. App'x 763, 768 (3d Cir. 2005) (affirming the dismissal of a § 1983 failure-to-train claim where plaintiffs failed to "identify any examples of specific training that the Township failed to provide," and it therefore could not "be said that the need for more or additional training [was] so obvious as to constitute deliberate indifference on the part of the Township"); *Pahler v. City of Wilkes-Barre*, 31 F. App'x 69, 72 (3d Cir. 2002) (affirming the dismissal of a § 1983 failure-to-train claim where the plaintiff "ma[de] no allegation that establishe[d] his injuries were ca[u]sed by the defendants' deliberately indifferent failure to train the City's officers"); *Williams v. Borough of Sharon Hill*, No. 12-5395, 2013 WL 4743471, at *4-5 (E.D. Pa. Sept. 4, 2013) (dismissing § 1983 failure-to-train claim due to plaintiffs' failure to allege facts showing deliberate indifference by municipality, such as by pleading "fact[s] to suggest a 'pattern of similar constitutional violations by untrained employees'" or facts from

6

which the court could conclude the municipality's "alleged failure to train was 'obviously going to lead to the constitutional violations alleged'" (citations omitted)).

When dismissing a civil rights complaint for failure to state a claim, a district court must grant the plaintiff leave to amend—even when the plaintiff does not request leave—unless amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Because it is not clear that amendment would be futile in this case, Norwood's § 1983 claim will be dismissed without prejudice to Norwood's right to file an amended complaint which cures the deficiencies identified herein.

Finally, as to Norwood's claim against Premier for filing a false police report, Premier argues the Court should dismiss the claim because filing a false police report does not constitute a freestanding tort under Pennsylvania law. Norwood does not dispute that there is no independent cause of action for filing a false police report, but argues he has nevertheless alleged a viable tort claim against Premier under *Colon v. Vash*, No. 08-CV-9968, 2011 Pa. Dist. & Cnty. Dec. LEXIS 240 (Pa. Ct. Com. Pl. Oct. 3, 2011). In *Colon*, the trial court denied summary judgment as to a claim for intentional infliction of emotional distress where the plaintiff alleged he had been wrongfully confined and arrested after a store manager falsely informed the police he had been shoplifting. *Id.* at *1. In denying the manager's summary judgment motion, the court held the plaintiff had "produced evidence sufficient to present to the fact finder that [the manager] acted by extreme and outrageous conduct by intentionally or recklessly making a false report to police that [plaintiff] had shoplifted and was carrying a weapon, causing police to arrest him at gunpoint, and that this report was allegedly based on racial profiling." *Id.* at *5-6. Norwood argues that although the Complaint does not identify his claim against Premier as one for intentional infliction of emotional distress, his allegations are sufficient to state a claim under

this theory. Premier's motion to dismiss does not address whether Norwood's allegations are sufficient to state a claim for intentional infliction of emotional distress. In addition, this Court intends to dismiss Norwood's state law claim against Premier without prejudice pursuant to 28 U.S.C. § 1367(c)(3)[3] if Norwood elects not to file an amended complaint against the Township. Accordingly, Premier's motion to dismiss will be denied without prejudice to reassertion to address whether Norwood has stated a claim for intentional infliction of emotional distress in the event Norwood files an amended complaint.

An appropriate order follows.

BY THE COURT:

　　/s/ Juan R. Sánchez　　
Juan R. Sánchez, J.

---

[3] Section 1367(c)(3) permits a district court to decline to exercise supplemental jurisdiction if the court "has dismissed all claims over which it has original jurisdiction."